IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION

MIKEL K. SMITH                                                                                    PLAINTIFF

v.                                          NO. 4:10CV00171 HDY

MICHAEL J. ASTRUE,                                                                             DEFENDANT
Commissioner of the Social
Security Administration

MEMORANDUM OPINION AND ORDER

BACKGROUND. Plaintiff Mikel K. Smith ("Smith") began his attempt to obtain benefits by filing applications for disability insurance benefits and supplemental security income benefits pursuant to the provisions of the Social Security Act ("Act"). His applications were denied initially and upon reconsideration. He then requested, and received, a de novo hearing before an Administrative Law Judge ("ALJ"). A decision adverse to Smith was eventually issued by the ALJ, and Smith appealed to the Appeal Council. The adverse decision was subsequently affirmed by the Appeals Council and therefore became the final decision of the Commissioner of the Social Security Administration ("Commissioner"). Smith then commenced the case at bar by filing a complaint pursuant to 42 U.S.C. 405(g). In the complaint, he challenged the Commissioner's final decision.

STANDARD OF REVIEW. The sole inquiry for the Court is to determine whether the ALJ's findings are supported by substantial evidence on the record as a whole. The standard requires the Court to take into consideration "the weight of the evidence in the record and apply a balancing test to evidence which is contrary." See Heino v. Astrue, 578 F.3d 873, 878 (8th Cir. 2009) [internal quotations and citations omitted].

THE ALJ'S FINDINGS. The ALJ made findings pursuant to the five step sequential evaluation process. At step one, the ALJ found that Smith has not engaged in substantial gainful activity since the alleged onset date. At step two, the ALJ found that Smith has the following severe impairments: "back, hypertension, knee and vision problems." See Transcript at 36. At step three, the ALJ found that Smith does not have an impairment or combination of impairments listed in, or medically equal to one listed in, the governing regulations. The ALJ then assessed Smith's residual functional capacity; in doing so, the ALJ considered the medical and non-medical evidence in the record. The ALJ found that Smith has the following residual functional capacity:

> … the claimant has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that the claimant can only lift and carry 20 pounds occasionally and 10 pounds frequently. The claimant can sit for about six hours during an eight-hour workday and can stand and walk for about six hours during an eight-hour workday. The claimant can only occasionally climb ladders and scaffolds and he can occasionally crawl. He can frequently climb stairs and ramps, balance, stoop, kneel, and crouch. The claimant should not do work requiring excellent vision, but he could avoid normal workplace hazards and would be able to determine differences in shapes and color of small objects such as screws, nuts and bolts.

See Transcript at 38. At step four, the ALJ found that Smith cannot perform his past relevant work as a "cook at a fast food restaurant, order puller at a cold storage, and over-the-road truck driver." See Transcript at 40. At step five, the ALJ found that considering Smith's residual functional capacity, age, education, and work experience in conjunction with the testimony of vocational expert, jobs exist in significant numbers in the national economy that Smith can perform.[1] Given the foregoing findings, the ALJ concluded that Smith is not disabled within the meaning of the Act.

SMITH'S ASSERTIONS OF ERROR. Are the ALJ's findings supported by substantial evidence on the record as a whole? Smith thinks not and advances three reasons why. First, he maintains that his obesity was not properly considered. Second, he maintains that that ALJ did not fully develop the record because he did not order consultative examinations. Last, Smith maintains that his residual functional capacity was not properly assessed.

OBESITY. Smith maintains that his obesity was not properly considered. In support of his assertion, he specifically maintains the following: "The ALJ erred by failing to find that [Smith's] obesity was a severe impairment. The ALJ did not specifically consider the effects of [Smith's] obesity on his level of functioning and made no finding regarding whether his obesity was severe." See Document 10 at 19.

---

[1] The ALJ found that on the alleged disability onset date, Smith was thirty-two years old, which is defined as a younger individual, and has at least a high school education. The ALJ also found that "[t]ransferability of job skills is not an issue … because the claimant's past relevant work is unskilled …" See Transcript at 40.

At step two, the ALJ is obligated to identify the claimant's impairments and determine whether they are severe.[2] At step three, the ALJ is obligated to determine whether the impairments, when considered individually and in combination, meet or equal a listed impairment. See Raney v. Barnhart, 396 F.3d 1007 (8th Cir. 2005). The determinations at steps two and three are strictly medical determinations. See Bowen v. Yuckert, 482 U.S. 137 (1987) (step two); Cockerham v. Sullivan, 895 F.2d 492 (8th Cir. 1990) (step three). Before proceeding to step four, the ALJ is obligated to assess a claimant's residual functional capacity.[3] The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses the claimant's ability to function in the workplace." See Brown v. Barnhart, 390 F.3d 535, 539 (8th Cir. 2004) [quoting Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003)]. The assessment must take into account all of a claimant's impairments, even those that are not severe. See 20 C.F.R. 404.1545(e), 20 C.F.R. 416.945(e).

In the paperwork Smith completed in connection with his applications for benefits, he represented that he is six feet tall and weighed 350 pounds. See Transcript 121. By the time of the administrative hearing, he testified that he weighed 480 pounds. See Transcript at 12. The ALJ noted Smith's obesity and addressed it as follows:

---

[2]

An impairment is severe if it has "more than a minimal effect on the claimant's ability to work." See Henderson v. Sullivan, 930 F.2d 19, 21 (8th Cir. 1992) [internal quotation omitted].

[3]

Residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d 535, 538-39 (8th Cir. 2004) [citing 20 C.F.R. 404.1545(a)(1)].

> With regard to obesity, there is no evidence that it has resulted in the claimant's inability to ambulate effectively or perform routine movement and necessary physical activity within the work environment. Further, although the claimant's obesity is mentioned by his treating physician, no particular medical significance is corresponded with this condition. While no listing now exists for obesity, the Listing of Impairments recognizes that obesity is often associated with disturbance of the pulmonary and cardiovascular systems, and that the combined effects of obesity with pulmonary and cardiovascular impairments can be greater than the effects of each of the impairments separately … Consequently, the claimant's obesity has been considered in accordance with SSR 02-1p, and the limitations associated with said obesity incorporated in the below residual functional capacity …

See Transcript at 40.

The Court is satisfied that the ALJ's findings regarding Smith's obesity are supported by substantial evidence on the record as a whole. The ALJ properly found at steps two and three that Smith's obesity is not a severe impairment and, when considered individually and in combination with his other impairments, does not meet or equal a listed impairment.[4] Although his weight is clearly excessive, a fact duly noted by his physicians, see Transcript at 225, 229-231, 253, 285, there is no medical evidence that his weight has more than a minimal effect on his ability to work. As the ALJ also noted, obesity is often associated with other impairments and the combined effects of obesity on those impairments "can be greater than the effects of each of the impairments separately." See Transcript at 40. Nevertheless, there is no medical evidence that his weight has exacerbated any other impairment in any meaningful way.

---

[4] Obesity is no longer a listed impairment. See 64 Fed. Reg. 46122 (1999).

The ALJ also properly included Smith's obesity in assessing his residual functional capacity. The ALJ specifically considered Smith's obesity in accordance with Social Security Ruling 02-1p and incorporated the limitations associated with his obesity into the residual functional capacity assessment.[5] The extent of the limitations caused by his obesity, though, is not great as he appears to have continued to work for several years after he was first diagnosed as obese.[6] See Banks v. Massanari, 258 F.3d 820 (8th Cir. 2001) (claimant worked extensively with all but one impairment). It is particularly telling that no physician ever placed any limitation on Smith's ability to perform work-related activities because of his obesity. See McNamara v. Asture, 590 F.3d 607 (8th Cir. 2010) (nothing in medical record indicated physician ever placed limitation on claimant's ability to work). It is also particularly telling that he has produced no evidence of a limitation caused by his obesity but not considered by the ALJ.

CONSULTATIVE EXAMINATIONS. Smith next maintains that the ALJ did not fully develop the record. Smith specifically maintains that the ALJ failed to do so because he did not honor Smith's requests for "orthopedic and cardiac consultative examination[s]." See Transcript at 168. It is Smith's position that the examinations were required because "the … medical records did not provide sufficient evidence for the ALJ to make an informed decision." See Document 10 at 20.

---

[5] The ALJ found that Smith can perform light work with additional limitations. See Transcript at 38.

[6] Smith was diagnosed as obese as early as 2001. See Transcript at 240. His earnings record indicates that he continued to work until at least 2006. See Transcript at 99-100.

The ALJ has an obligation to fully and fairly develop the record. See Battles v. Shalala, 36 F.3d 43 (8th Cir. 1994). The obligation exists even if the claimant is represented by counsel. See Boyd v. Sullivan, 960 F.2d 733 (8th Cir. 1992). With regard to ordering a consultative examination, it is reversible error for an ALJ not to order such an examination when it is necessary to make an informed decision. See Freeman v. Apfel, 208 F.3d 687 (8th Cir. 2000).

The record reflects that Smith requested orthopedic and cardiac consultative examinations prior to, and during, the administrative hearing. See Transcript at 10, 168. He requested the examinations because, save two emergency room visits, financial concerns prevented him from visiting a physician since the first months of 2008. See Transcript at 10, 168. The ALJ never ordered the examinations and gave no reason for declining to do so.

The Court has examined the record and is satisfied that the ALJ did not err in declining to order orthopedic and cardiac consultative examinations. Smith identified the matters that the consultative examinations would have disclosed, see Document 10 at 20-21, but those matters are largely cumulative as the medical record already contained evidence of the matters. For instance, Smith maintains that the examinations would have substantiated his claims of back and knee problems. The record, however, contains numerous references to both impairments, see Transcript at 188-307, impairments that the ALJ found to be severe. Thus, the Court is satisfied that the record was adequate for the ALJ to make an informed decision.

RESIDUAL FUNCTIONAL CAPACITY. Smith last maintains that his residual functional capacity was not properly assessed. He specifically maintains that the assessment made by the ALJ is not supported by any medical evidence.[7]

In assessing Smith's residual functional capacity, the ALJ briefly noted Smith's medical history and his impairments, severe and not severe, supported by the medical evidence. The ALJ found that the medical evidence did not preclude the performance of light work with some additional restrictions. The ALJ also considered Smith's subjective complaints. The ALJ noted that to the extent Smith's complaints were not substantiated by the medical evidence, the record as a whole was considered to determine the credibility of his complaints. In doing so, the ALJ cited, inter alia, 20 C.F.R. 404.1529, 20 C.F.R. 416.929, and Social Security Ruling 96-7p.[8] The ALJ found that although Smith experiences some pain, the severity of his pain is not as great as he alleged and does not preclude the performance of light work with some additional restrictions.

The Court is satisfied that the ALJ properly assessed Smith's residual functional

---

[7]

As the Court has noted, residual functional capacity is simply an assessment of "the most a person can do despite that person's limitations." See Brown v. Barnhart, 390 F.3d at 538-39. The assessment is made using all of the relevant evidence in the record and must be supported by "medical evidence that addresses the claimant's ability to function in the workplace." See Id. at 539 [quoting Lewis v. Barnhart, 353 F.3d at 646].

[8]

Social Security Ruling 96-7p outlines the standard the ALJ must use in assessing the credibility of a claimant's statements. It conforms to the standard articulated in Polaski v. Heckler, 739 F.2d 1320 (8th Cir.1984), by providing that the ALJ must consider, inter alia, the following factors in assessing the claimant's credibility: the claimant's daily activities; the location, duration, frequency, and intensity of the claimant's pain and other symptoms; factors that precipitate and aggravated the symptoms; the type, dosage, effectiveness, and side effects of any medication; and any functional restrictions.

capacity. The ALJ properly considered the medical evidence, including the findings and opinions of Smith's treating physicians. There is nothing about their findings and opinions that contravene the ALJ's finding that Smith is capable of performing light work with some additional restrictions. First, Smith has a history of panic attacks. See Transcript at 295. There is scant medical evidence to support the impairment, and the ALJ did not take it into account in making his assessment. Second, Smith is clearly obese. The ALJ took the impairment into account in making his assessment. Third, Smith has a history of hypertension. See Transcript at 191, 210. Although there is medical evidence to support the impairment, there is no medical evidence that it impacts his residual functional capacity in any way. Apparently for that reason, the ALJ did not find any restriction caused by the hypertension. Fourth, Smith has a history of visions problems. See Transcript at 182-187, 216-219. There is medical evidence to support the impairment, and the ALJ took it into account in making his assessment. Fifth, Smith has a history of back problems. See Transcript at 188-209, 250-279. Save some spondylosis and curvature, though, a lumbar x-ray of his back was unremarkable. See Transcript at 215. Sixth, Smith has a history of knee problems. See Transcript at 225-244, 248-249. There is medical evidence to support the impairment, although not to the degree he alleged. He had surgery on his right knee in January of 2008, and the physician's notes reflect that Smith was "doing well" during his recovery. See Transcript at 282. The ALJ took Smith's back and knee impairments into account in making his assessment.

    The ALJ also properly considered the non-medical evidence, including Smith's

subjective complaints. There is nothing about the non-medical evidence that contravenes the ALJ's finding that Smith is capable of performing light work with some additional restrictions. He largely complained of pain in his back and knees. Although he is undoubtedly in some pain, his credibility is undermined by the extent of his daily activities, <u>see</u> Transcript at 137-142; the conservative treatment prescribed by his treating physicians, <u>see</u> Transcript at 225-244, 248-249, 250-279; his decision at times to decline pain medication, <u>see</u> Transcript at 251; and, particularly telling, his failure to keep appointments with a chronic pain specialist, <u>see</u> Transcript at 191.

<u>CONCLUSION</u>.  There is substantial evidence on the record as a whole to support the ALJ's findings. Accordingly, Smith's complaint is dismissed, all requested relief is denied, and judgment will be entered for the Commissioner.

IT IS SO ORDERED this ___19___ day of May, 2011.

_____
UNITED STATES MAGISTRATE JUDGE